# WILLIAM DOMBROVSKI et al.

## *vs.*

# THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Intestacy—Payment to School Fund—Lack of Heirs—Erroneous Assumption.*

In Code, art. 93, sec. 136, providing for the recovery of money wrongfully paid over from an intestate's estate to the school fund by reason of a' supposed lack of relations of the intestate within the fifth degree, but further providing that no collateral more remote than "brothers' and sisters' children" shall claim thereunder, the .quoted words refer, not to the children of brothers and sisters of the intestate, but to the relationship between the children of brothers and sisters, as expressing the degree of relationship between the claimant and the intestate necessary to support the recovery. p. 426

Even conceding that the language referred to means that the claimant must be related to the intestate not more remotely than a child of a brother or sister of the intestate, this would not exclude a first cousin of the intestate, since he is not more remotely related than a nephew, applying the method of computation, prescribed by section 135, of "counting down from the common ancestor to the more remote." p. 425

When the surplus of an intestate's estate was paid over to the City of Baltimore for school purposes, as provided by Code, art 93, sec. 135, on the erroneous assumption that the intestate left no relations within the fifth degree, the property or money thus received by the city was impressed with a trust in favor of the persons entitled thereto under the statute of distributions. p. 427

The power of a court of equity to enforce a trust is not affected by the fact that the *cestui que trust* could sue at law to recover the property. p. 427

*Decided June 23rd, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

## Opinion of the Court.

Bill by William Dombrovski and Edward Dombrovski against the Mayor and City Council of Baltimore. From a decree for defendant, plaintiffs appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, ADKINS, and OFFUTT, JJ.

*David Ash,* with whom was *James Fluegel* on the brief, for the appellants.

*George Eckhardt, Jr., Assistant City Solicitor,* with whom was *Roland R. Marchant, City Solicitor,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The main question presented by this appeal is whether the first cousin of a person, dying in this State possessed of personal property and leaving no nearer relatives, and where the estate of the decedent has been distributed to the State upon the theory that the decedent left no relatives within the fifth degree of consanguinity, can recover from such distributee, or the department thereof actually receiving the money, the proportion thereof to which such claimant would be entitled under the statute of distribution.

The facts from which that question arises are these: Mary Blokes, a resident of Baltimore City, died intestate October 12th, 1918. Her nearest living relatives then were the appellants, her first cousins. Upon the death of Mary Blokes, Richard Benjis, who was neither a relative nor a creditor of the deceased, applied to the Orphans' Court of Baltimore City for letters of administration on her estate. The letters were granted without the knowledge of the only relatives of the decedent who also lived in Baltimore. Benjis administered the estate, and distributed the surplus thereof to the Mayor and City Council of Baltimore. The appellants demanded that the appellee return the money so received by it to them, and upon its refusal they filed the bill of complaint in this case, in which they set up these facts, prayed for a discovery of the amount received by the appellee

and the circumstances attending its payment, for an accounting, and for a decree declaring the money to be held in trust for the appellants, and requiring the appellee to pay it to them. The appellee answered this bill, and its answer, after admitting the allegations of record facts, and denying or requiring proof of the other averments of the bill, contains this clause: "Answering the fifth paragraph of said bill, this respondent says that even if the complainants in said bill named are first cousins of the said Mary Blockes, which relationship this respondent neither admits nor denies, but demands full proof thereof, they have no right to demand a refund of the money belonging to the estate of said Mary Blockes and ordered by the Orphans' Court of Baltimore City to be paid over by the said Richard Benjes, administrator, to this respondent; that said money having been duly paid over to your respondent in accordance with the law for the use and support of the public schools of the City of Baltimore, no collateral more remote than brothers' and sisters' children can, under the provisions of section 136 of article 93 of the Code of Public General Laws of Maryland, claim or demand the payment or refund of the money paid to this respondent as aforesaid." This paragraph has been treated as a demurrer to the bill.

Whether the appellants are entitled to recover from the Mayor and City Council of Baltimore City the money paid it by Benjes depends upon whether the relationship of the appellants to the decedent is too remote to permit them to assert their claim under the provisions of the statute of distribution. Section 135, article 93, Code Pub. Gen. Laws of Maryland, which should be read in connection with section 136, provides: "If there be no widow or relations of the intestate within the fifth degree, which shall be reckoned by counting down from the common ancestor to the more remote, the whole surplus shall belong to the State, and shall be paid to the board of county school commissioners of the county wherein letters of administration shall be granted upon the estate of the deceased, for the use of the public schools of said

county," and section 136 reads: "If any legal representative shall appear after payment has been made under the preceding section, the board of county school commissioners receiving such payment shall pay the same to such representative; but no collateral more remote than brothers' and sisters' children shall claim under this section."

The question before us, therefore, is whether the relation of the claimants to the intestate is "more remote than brothers' and sisters' children." The method of computing degrees of relationship of collateral relatives, claiming under this section, to the decedent, is fixed by section 135, since there is no reason why the rule fixed by that section for determining when the State would be entitled to take under the distribution should not be followed in determining whether a person entitled under the statute of distribution to take is empowered to recover his share of an estate erroneously distributed to the State under the provisions of section 135. The degree of kinship between collaterals is under that section to be ascertained by counting down from the common ancestor to the more remote. *State* v. *Greenwell*, 4 G. & J. 415. And if we apply that rule in this case, the claimants, as the first cousins of the decedent, were related to him in the second degree, since from their common ancestor, their grandfather, to the claimants' fathers would be one degree, and from the claimants to their father would be one degree. In the same way, if the claimants were nephews of the intestate, they would also be related in the second degree, since in such a case, from the claimants' grandfather, the common ancestor, to the claimants' father, would be one degree, and from their father to the claimants one degree. Reckoned in that way, first cousins are not more remotely related to the intestate than nephews would have been, even if we assume that the expression "brothers' and sisters' children" means the children of brothers and sisters of the decedent, which it manifestly does not. 2 *Blackst. Comm.* pages 205, 206. We are not concerned here with any question of preference between different classes entitled to take under the statutes of

distribution and descent, such as was dealt with in a very elaborate opinion in *Hoffman* v. *Watson*, 109 Md. 532, but are dealing solely with the question of whether, reckoning from the common ancestor down to the more remote relative, a first cousin is more remotely related to the intestate than a nephew would be, and since it is apparent that the first cousin and the nephew would each be related in the second degree to the intestate, neither is more remotely related to him than the other.

The appellants' claim to relief does not however necessarily rest upon the fact that, under the rule prescribed by section 135 for reckoning degrees of relationship among collaterals, an uncle and his nephew are related in the same degree as first cousins, but upon the literal language of the act itself. Section 136 provides that no collateral "more remote than brothers' and sisters' children" shall claim under it. The expression "brothers' and sisters' children" is apparently used to express the degree of relationship between a claimant and an intestate necessary to support such a proceeding as this. The appellee's contention appears to be that it means that the claimant must be related to the intestate not more remotely than a child of a brother or sister of the intestate. But if the Legislature had meant that, it could have said it just as easily as it used the expression now in the statute, and since it said that the relationship between the collateral and the intestate, to permit him to maintain such a proceeding as this, should not be more remote than "brothers' and sisters' children," it must have meant that such relationship should not be more remote than the relationship between the children of brothers and sisters, and since the intestate and the claimants in this case are "brothers' and sisters' children," they are within the description contained in the statute.

Since it is conceded that the claimants, being related within the fifth degree of consanguinity to the intestate, were entitled, under the statute of distribution, to share in the distribution of the intestate estate, and since the share to which

they are entitled was distributed to and is held by the appellee, the only remaining question is whether a court of equity had the power to grant the relief prayed.

The general rule is that a court of equity has jurisdiction to enforce a trust (39 *Cyc.* 588; *Dillon* v. *Conn. Mut. Life Ins. Co.,* 44 Md. 386), and the mere fact that in such a case as this the *cestui que trust* could also sue at law for the recovery of the property claimed does not take away that power. *Rock Hill College* v. *Jones,* 47 Md. 1. We are also satisfied that the property or money which the appellee received was impressed with a trust in favor of such persons as might under the statutes of distribution be entitled thereto. The case of *Rock Hill College* v. *Jones,* 47 Md. 1, whilst not presenting the identical question, by analogy supports this view, and while the bill of complaint in this case is neither clear nor explicit in its disclosures, nevertheless it does state these essential facts, first, that the claimants are first cousins of the intestate, and second, that the surplus of the estate, remaining after the payment of the administration expenses, was paid over to and held by the appellee upon the erroneous presumption that the intestate left no next of kin related to her within the fifth degree of consanguinity. Under such circumstances the appellee knew that it did not acquire the fund absolutely and indefeasibly, but that it held it subject to the right of any person qualified under section 136, article 81, Code Pub. Gen. Laws of Maryland to receive it upon demand, and it held it in trust for such person. In our opinion, therefore, the demurrer to the bill of complaint should have been overruled, and the decree sustaining the demurrer and dismissing the bill of complaint should not have been passed, and must therefore be reversed.

*Decree reversed and case remanded for further proceedings, with costs to the appellants.*