## J. GORMAN HILL *v.* LEAH E. PINDER.

*Bill for Discovery—In Aid of Action at Law—Equity Jurisdiction—Production of Document—Sufficiency of Bill—Indefinite and Evasive Answer—Taking of Oral Testimony—Prayer for General Relief—Right to Accounting.*

While the answer may, after either admitting or controverting all the allegations of fact in the bill of complaint, insist in conclusion upon the same benefit as if the pleader had demurred to the whole bill, the effect is to postpone any benefit to be derived by this course until at the hearing of the cause.

pp. 405, 406

An interlocutory application under Code, art. 16, sec. 26, to compel a party to an action at law or suit in chancery to produce writings or certified copies thereof to be used as evidence in the cause, is not required to be under oath, it being sufficient that,

as a condition precedent to the grant of the application, the applicant satisfy the court on oath or affirmation that the writing contains material and necessary evidence, and that she cannot safely proceed to trial without the benefit of such testimony. p. 406

The original jurisdiction of a court of equity, as regards bills of discovery, has not been abolished by statutory provisions for the production, in particular instances, of books and papers and other writings, though the broad statutory remedies have lessened the use of such bills. p. 407

The sufficiency of a bill for discovery and general relief is to be determined by its conformity to the general rules governing equity pleadings, and not by its verbal reproduction of the statutory prerequisites to the grant of an order after an interlocutory application by virtue of Code, art. 16, sec. 26. p. 408

A bill for discovery, averring that relief is claimed by reason of an action pending at law between plaintiff and defendant, stating facts from which the nature of the plaintiff's case, and of the injury on which it is based, clearly and definitely appear, and alleging defendant's possession of a writing which contains the contract on whose production and proof plaintiff's cause of action at law necessarily depends, and which action she is unable to prove, except through the discovery and production thereof by defendant, who has refused to let her either see or have a copy, entitles plaintiff to that relief. p. 408

A bill of complaint for the purpose of discovery and general relief is not within that limited class of bills which require verification. p. 408

Code, art. 75, secs. 106, 107, giving power to courts of law to compel the parties in an action at law to produce copies of writings or to answer any bill of discovery, and to courts of law and equity, during the course of any proceeding, to compel the production of any paper or document, is not as extensive in scope as the jurisdiction in chancery to compel discovery. p. 409

Although largely superseded by statute, the auxiliary jurisdiction of equity to enforce discovery still subsists in those circumstances where the statutory mode is not adequate, complete and sufficient. p. 410

On a bill in equity for discovery, and nothing more, an answer under oath will terminate the proceedings, provided the answer is full, direct and responsive to every allegation of fact in the bill, so that the discovery would be made, or a sufficient ground or circumstance for the failure would be disclosed. p. 410

On a bill in equity for discovery of a contract for the sale of land by plaintiff to defendant, in aid of an action by the former against the latter for damages on account of the fraudulent procurement of defendant's execution of a deed for more land than she had contracted to sell, *held* that an answer made under oath was evasive and equivocal, and a supplemental answer, the material averments of which were not embraced in those of the first answer, was not sworn to, and consequently the allegations of the answers could not be accepted as sufficient.      p. 410

That, on a bill in equity for discovery, where the allegations of defendant's answer and supplemental answer were insufficient, the court, instead of following the usual practice of compelling defendant to give discovery by further answer under oath or by affidavit, took the oral testimony of witnesses on the part of both plaintiff and defendant, in reference to the existence, custody, and control of the document as to which discovery was sought, *held* not to have involved any substantial injury to defendant, who was ordered by the chancellor to file such document in the equity cause if it could be found by him.      pp. 411, 412

On a bill for discovery as to a certain writing, alleged to be in defendant's custody and control, an order of the chancellor that defendant file such writing in case it could be found by him, *held* to be justified by the oral testimony taken before the chancellor as to the evidential character of the writing, and the possibility of its production by defendant.      pp. 412, 413

A proceeding by way of discovery to secure the production of a paper writing is not *per se* admissible to establish the contents of the writing, which would have to be shown in accordance with the rules and principles governing the admission of testimony.      p. 413

A recital, in an order of the chancellor requiring the production of a particular writing, is not admissible in evidence in any suit at law or in equity between the parties in respect to the

substantive rights and obligations growing out of a conveyance wtih reference to which the production of the writing was sought. p. 413

On a bill in equity for discovery as to a written contract for the sale of land by plaintiff to defendant, in aid of a pending action at law by plaintiff against defendant in tort, based on an alleged fraud, and for general relief, it appearing that when plaintiff brought such action she was not aware of the probability of not having the written evidence of the contract of sale at the trial in the law court, by reason of its non-production, that the chancellor's order under the bill of discovery for the production of such contract had not been complied with, and that the action at law had not been tried, *held* that plaintiff should not be compelled to pursue her remedy at law for the tort, if she should desire to proceed in equity to obtain relief by way of an accounting, to which she was entitled by the averments of her bill. pp. 413, 414

Under a prayer for general relief, the court is not confined to what may be specially asked, but may adapt the relief to the nature of the case as stated in the bill; and if the specific relief prayed for cannot be granted, the plaintiff may be given any relief which is consistent with and warranted by the allegations of the bill. p. 414

Averments in a bill that defendant was plaintiff's counsel and possessed her full confidence, and that by reason of plaintiff's reliance on this relation, she accepted his statement that a deed to him, presented by him for execution by her, was in exact accordance with a previous written contract of sale between them, and executed it without reading it or having it read to her, that later she discovered that through defendant's fraud she had conveyed to him more land than she had agreed to convey, that defendant had resold such land to an innocent purchaser for value, and that defendant had refused to account to her for the value of the land so fraudulently acquired, *held* to show a duty on defendant's part to account for the value of the excess in quantity of the land conveyed, and for any profits from the sale of such excess, such alleged acts by defendant amounting to a breach of trust and fraudulent conduct. p. 414

Where, on a bill for discovery as to a paper writing alleged to be in defendant's control, an order, requiring the latter to produce such writing, if it could be found by him, failed to specify the time within which defendant's production of the paper would be required, *held* that the order should be modified in this regard.                                                p. 415

*Decided April 7th, 1926.*

Appeal from the Circuit Court for Dorchester County, In Equity (Bailey, J.).

Bill by Leah E. Pinder against J. Gorman Hill. From an order as prayed for in the bill, defendant appeals. Cause remanded.

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*V. Calvin Trice* and *LeRoy L. Wallace,* with whom was *T. Sangston Insley* on the brief, for the appellant.

*Henry L. Johnson,* with whom were *Henry & Henry* on the brief, for the appellee.

Parke, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by Leah E. Pinder, a colored woman, against J. Gorman Hill, an attorney at law of Cambridge. The complainant alleged: (1) that she was the owner of a tract of land which she had obtained from her husband by deed dated September 10th, 1910, and that on March 17th, 1924, she entered into a contract in writing with the defendant for the sale of a part of the tract; and that this contract had been first read to her, and clearly and correctly described that part of the tract which had been sold, and that she and the defendant then executed the contract; and (2) that the defendant was her attorney and assured her that the deed, which he had prepared, conveyed the same land she had sold, and that, relying upon the defendant's statements and his good faith, she, without reading or having read to her the deed, executed and delivered

it on March 22nd, 1924, granting, as she believed and in-
tended, the part of the tract that she had sold to the defend-
ant and his wife as tenants by the entireties; but that about
two months later the complainant discovered that the deed
conveyed not only the part sold and by her believed to have
been conveyed, but also other and additional land of large
value; and that, upon such discovery, the complainant made
demand for the restitution of the land so wrongfully in-
cluded in the deed, but the defendant declined to make resti-
tution of the excess land so conveyed or to make compensation
therefor; and (3) that, before the complainant discovered
the fraud, the defendant and his wife sold, and, on May
17th, 1924, conveyed, all the land in the deed described to
Charles H. Seward, an innocent purchaser for value, who
duly recorded his deed, and, for these reasons, the complain-
ant had instituted no proceedings in equity to set aside her
deed to the defendant and his wife, but had begun an action
at law for the recovery of damages for the land so wrongfully
and fraudulently procured by the defendant to be conveyed
to him and his wife; and (4) that the contract of sale was
kept by the defendant and was in his possession, but the com-
plainant had neither the contract, nor duplicate, nor copy
thereof, and that, since the institution of the action at law,
she had demanded the contract of the defendant, but that he
had neither given it or a copy thereof nor produced the con-
tract for her inspection; and that it is important that said
contract be produced at the time of said action at law, and
that the object of the bill of complaint is "for the discovery
of said contract for the purpose of making use thereof in
the trial of the said action at law for the recovery of dam-
ages for the fraud." The bill then prayed that the defend-
ant make full and true disclosure under oath concerning the
contents and execution of the contract of sale, and be re-
quired to deliver to the complainant for her inspection and
use in the trial at law the original contract or a copy; and
for general relief.

The answer of the defendant denied the existence of any professional relation and the allegations of fraud and deceit, and asserted that he had bought and the complainant had sold exactly what had been conveyed by the terms of the deed. The defendant admitted that some time after the delivery of the deed and his sale of the land, the complainant had asked him to divide with her the profit which he had made on the re-sale, but that he had declined because he was entitled to whatever profit resulted from his bargain. The answer further denied that there had ever been between him and the complainant any written contract of sale. Accompanying these statements of fact were interposed defences (1) by way of a general denial of the sufficiency of the allegations of the complaint to entitle the complainant to any relief in equity, so as to claim this defence as fully and completely as if it had been "raised by a special plea or demurrer to the bill"; and (2) by asserting that the relief sought could be fully and completely obtained by interlocutory proceedings in the action at law, which was pending at the time of the institution of these proceedings in equity. This answer was verified by the defendant and the affidavit contained the statement that the allegations in said answer partaking of the nature of demurrers were not intended for the purpose of delay. Four months later, on the application of the complainant, the court passed an order granting leave to the parties to take testimony before one of the examiners in equity. The defendant apparently asked that the demurrer embodied in his answer should be heard and sustained; and then that the cause should be heard upon bill and answer, because the order of the chancellor expressly declared that, "his contentions in these respects having been overruled," and the parties so desiring, the testimony should be taken in open court. Before any testimony was taken under this order, the defendant asked and got leave to file a supplemental answer, which asserted that, expecting the bill of complaint to be dismissed on the grounds of demurrer incorporated in his original answer, he had not

thought it necessary to go into a detailed and complete recital of the facts, but had contented himself with a denial of the allegation of a written contract signed by himself and the complainant, because he and she had not signed together a written contract of sale, but, inasmuch as the court might desire a full and complete disclosure of any and all things relative to the sale, he was moved to make a further answer.

The new matter of the supplemental answer was that the single instrument of writing in the transaction was an option signed by Leah E. Pinder only, and witnessed by defendant's wife; that the option was written on the upper portion of a sheet of legal paper, and upon the lower half there was an agreement signed by Charles E. Pinder and Thomas P. Pinder in reference to hunting or trapping on the marsh land on which the option was taken; that the defendant kept the paper writings, which he placed in the deed he received from the complainant, and, when he sold the land to Charles H. Seward, the defendant tore the sheet of paper along the middle fold and put the portion with the option in the deed which he delivered to Seward, and the lower half was retained by the defendant and subsequently delivered by him by request to Charles E. Pinder; but that since these deliveries of the two halves the defendant has never seen either the option or the hunting agreement, although he had made diligent effort and inquiry to locate the option given with the deed to Seward.

The defendant's supplemental answer set out the form of the option, according to his recollection, as follows:

"Received of J. Gorman Hill the sum of one dollar for which I agree to sell him all my marsh land situated on the east side of Bear Garden Pond, containing about two hundred acres, more or less, at and for the sum of one thousand dollars, if accepted this week. If accepted, the one dollar paid to be a part of the purchase price. Title to be a good and merchantable one.

"Test: WILLIE B. HILL.      LEAH E. PINDER.. (Seal)"

The defendant alleged that he did not accept this option nor was the sale made in conformity with its terms, but that the next day after the option was signed, the defendant and complainant visited the property, and she informed the defendant that she would not sell all of the property mentioned in the option, but would reserve therefrom about five acres to the west of Pear Tree Island; and that thereupon the two made a new verbal agreement for the purchase and sale of the property, whose lines the complainant gave to the defendant, and he wrote them down upon the back of an old envelope, prepared the deed in exact conformity with this description, and then destroyed the envelope; and that the defendant did not then know the lines and bounds of the property, but had relied entirely upon the description given him by the complainant of what he was buying.

On the day the supplemental answer was filed, the testimony was taken in open court by the parties in support of the allegations of fact set forth in their respective pleadings. The cause was then submitted and the chancellor declared by decree that the preponderance of evidence established that the deed of complainant to the defendant and his wife described and conveyed lands "of greater area and value than those agreed to be sold in the agreement between the parties mentioned in evidence, which the defendant alleges has been lost," and ordered "that the defendant shall produce and file the said agreement in these proceedings, if the same can be found by him, so that it may be used by the parties in the trial" of the pending action at law between them.

The parties and the chancellor, in all the proceedings, treated the bill of complaint as one for discovery alone, when it was one for both discovery and relief; and so the questions raised on this appeal must be determined with reference to this double aspect of the bill of complaint.

1. The original answer either admitted or controverted all the allegations of fact in the bill of complaint, and then insisted, in conclusion, upon the same benefit as if the

pleader had demurred to the whole bill of complaint. This is permitted by equity practice, but its effect is to postpone any benefit to be derived by this course until at the hearing of the cause. Code, art. 16, secs. 179, 173; *Miller's Equity,* sec. 170; *Buckner v. Cronhardt,* 132 Md. 612, 616; 1 *Daniell's Chancery Pl. & Pr.* 714, 715. The record does not clearly disclose the fact, but apparently the chancellor considered the demurrer before any testimony was taken, and held the bill of complaint sufficient. The grounds of the demurrer were: (a) that the bill of complaint was not verified by affidavit and that the bill of complaint did not allege that the paper writing involved contained material and necessary evidence, and that the plaintiff could not safely proceed to the trial of her case without the benefit of such testimony; and (b) that the same relief could have been obtained in the suit at law between the parties under the provisions of sections 106, 107 and 108 of article 75 of the Code.

(a) The present proceeding is not an interlocutory application to a court of equity under section 26 of article 16 of the Code, to compel a party to an action at law or in chancery to produce either original writings, or copies certified by a justice of the peace of such writings as contain evidence pertinent to the matters in issue or in dispute between the parties, to be used as evidence at the trial of such cause, but is a formal bill of complaint for discovery and general relief under the general equitable power of a court of chancery. Even if it be granted, *ex gratia argumenti,* that the plaintiff had made an interlocutory application under section 26 of article 16, the law did not require the statutory application to be under oath, but it simply exacted, as a condition precedent to the court's giving an order to produce either the original writing desired or its copy certified by a justice of the peace, that the party who had made the application should first satisfy the court on oath or affirmation that the writing contained material and necessary evidence, and that she could not safely proceed to trial of her case without the benefit of its testimony.

The provisions relied upon by the appellant do not go to the form of the application pursuant to the terms of section 26 (Act of 1798, ch. 84), but merely prescribe the minimum degree of substantiation of the essential grounds for the application before the chancellor may pass the order sought. An early illustration of this construction of the statute is found in *Williams v. Hall,* which is reported as a foot note to *Jones v. Magill,* 1 Bland, 177, beginning at page 193. The bill of complaint in *Williams v. Hall* was filed on July 15th, 1809, and, in the course of the proceedings, the plaintiffs presented their petition on February 9th, 1811, asking for the production of certain paper writings of the defendants, David Stewart & Son, but this application was "without oath or affidavit of any one," and Chancellor Kilty refused to grant the petition, as "the order prayed for cannot be made without a compliance with the requisites of the Act of 1798, ch. 84. After which one of the plaintiffs, Williams, filed his affidavit of the truth of the facts and allegations stated in their petition, asking for the production of books and papers"; and four days later the chancellor, "On considering again the within petition, together with the affidavit now annexed thereto" gave the order. See *Duvall v. Farmers' Bank,* 2 Bland, 686. In the present case, the chancellor did not pass any order until after answer and proof. The plaintiff testified and her evidence fully gratified the demands of the statute.

It should be noted that the Act of 1798, ch. 84 (Code, art. 16, sec. 26), has, as was said in *Winder v. Diffenderfer* (1829), 2 Bland, 166, 195, always been truly considered as merely an affirmance of the general equity powers of this Court. The original jurisdiction of a court of equity has not been abolished in Maryland by statutory provisions providing, in particular instances, for the production of books and papers and other writings, although the broad statutory remedies have lessened the use of bills of discovery. When the right is not expressly taken away by the statute, the original jurisdiction of chancery, which is as ample and

complete as the necessity, is not ousted. *Union Passenger Railway Co. v. Baltimore,* 71 Md. 238, 405; *Miller's Equity,* sec. 737, p. 838.

So, the sufficiency of the bill for discovery and relief in the instant cause is to be determined by its conformity to the general rules governing equity pleadings, and not by the bill's verbal reproduction of the statutory prerequisites to the granting of an order after an interlocutory application by virtue of section 26 of article 16 of the Code. In the bill the pleader has set out that relief is claimed by reason of an action now depending in a court of law between the plaintiff and the defendant; and has, also, stated facts from which clearly and definitely appear the nature of her case, and how an injury has resulted to her therefrom, entitling her to maintain the action at law against the defendant for the recovery of damages therefor; the possession by the defendant of the paper writing which contains the contract upon whose production and proof the plaintiff's cause of action at law necessarily depends, and which action she is unable to prove, except through the discovery and production thereof by the defendant, who is charged with having refused to let the plaintiff either see or have a copy thereof. These averments in a bill for discovery alone entitle the plaintiff to that relief. *Miller's Equity,* secs. 738, 739; *Price v. Tyson,* 3 Bland, 392, 397; *Wolf v. Wolf,* 2 H. & G. 382, 388, 389; *Reddington v. Lanahan,* 59 Md. 429, 439, 440; *Oliver v. Palmer,* 11 G. & J. 426, 445.

Again, a bill of complaint for the purpose of discovery and general relief is not within that limited class of bills which require verification. *Miller's Equity,* sec. 89, notes 4 and 5; *Daniell's Ch. Pr.,* 392-396, 1558; *Beach, Eq. Pr.,* secs. 85-86; *Campbell v. Sheldon,* 13 Pick. (Mass.) 8.

(b) The remaining point relied on in support of the demurrer was that the same relief could have been obtained in the suit at law under the provisions of sections 106 and 107 of article 75 of the Code.

Section 106 gives the court of law power to compel the parties in an action at law (1) to produce copies, certified by a justice of the peace, of all such writings in their possession or power, containing evidence pertinent to the issue, if motion be so made at the first court after the appearance court; or (2) to answer any bill of discovery if filed by the second court after the appearance court and if in cases and under such circumstances where they might be compelled to produce said original books or writings or answer such bill of discovery by the ordinary rules of proceedings in chancery. Section 107, which is a codification of the Acts of 1888, ch. 529, provides, in effect, that whenever during the course of any proceedings at law or in equity it shall appear to the court wherein the matter is pending that the production of any paper or document, not produced by any party, is necessary to the purposes of justice, the court may require the party to produce such paper or document for inspection by court or jury, or may issue process for its production.

While these provisions are comprehensive and should not be restricted by a narrow construction, it will be observed that the scope of the statute is not as extensive as the jurisdiction of chancery. For instance, both sections are of an interlocutory nature and fail to provide for discovery as preliminary to the bringing of an action; section 106 has been held not to apply to issues from the orphans' court in a law court for trial, nor available unless authorized procedure be instituted within the terms of court limited. *Magraw v. Munnikhuysen,* 35 Md. 291, 293; *Rich v. Boyce,* 39 Md. 314, 323; *Tome v. Parkersburg Branch R. R. Co.,* 39 Md. 36, 89; *Parrott v. Chestertown Bank,* 88 Md. 515, 518. Under neither section has the court as adequate power as in chancery to compel a party to make disclosure under oath of the contents of a paper writing, which had been in his possession, and while there has been lost, mislaid or destroyed; and each section relates to discovery only and not to discovery *and* relief. These and other illustrations point

to the practical necessity of maintaining the rule that, although largely superseded by statute, the auxiliary jurisdiction of equity to enforce discovery still subsists in those circumstances where the statutory mode is not adequate, complete and sufficient. *Becker v. Lipps Co.,* 131 Md. 301, 306, 307. The error of the appellant in this connection lies in conceiving the bill here as one for discovery only.

2. The taking of testimony after the filing of the answer by the defendant is assigned as another reason for reversal. The object of the bill was twofold, discovery and general relief. If it had been a bill for discovery and nothing more, an answer under oath would have terminated the proceedings, provided the answer had been full, direct and responsive to every material allegation of fact in the bill of complaint, so that the discovery would have been made, or a sufficient ground or circumstance for the failure would have been disclosed. The answer did not possess these qualities, as was indubitably shown by the defendant's petition for leave to file a supplemental answer, and by this answer when filed. By the supplemental answer the defendant for the first time admitted that a paper writing had existed and revealed that the defendant claimed it had been signed by the plaintiff only; that it was but an unaccepted option to sell more land than had been conveyed; and that the consummated contract of sale was a later and an oral one with which the deed strictly conformed. This last answer further averred that the option, which was the paper writing that the defendant was asked to produce, had been delivered before suit brought by the defendant to the purchaser of him of the land, and that the defendant had been unable to obtain possession of this paper writing, whose complete contents and form the defendant attempted to set forth in the answer from his recollection.

While the original and the supplemental answers must be regarded as one pleading for the purpose of determining the adequacy of the defence interposed thereby, and although it has not been the practice to permit the party for whom

production is required to be cross-examined on his defence by answer, nor can evidence be introduced in contradiction, yet the answer itself may through indefiniteness and variance in its statements, and the absence of verification, furnish sufficient evidence of its inherent unreliability and so not constitute an adequate defence against the production of the document demanded. In the instant appeal, the first answer was made under oath and was evasive and equivocal, while the second is shown by the record not to have been sworn to, and its material averments were not embraced in those of the first answer. Therefore, the allegations of the answers could not be accepted as sufficient, and it would have been consistent with sound equitable practice to have compelled the defendant to have given discovery by further answer under oath or by affidavit. *Eschbach v. Lightner,* 31 Md. 528, 535; *Price v. Tyson,* 3 Bland, 392; *Kerr on Discovery,* 56, 70; 2 *Daniell's Chancery Pl. & Pr.* 1823, 1824; *Langdell on Equity Pleading,* sec. 164; *Wigram on Discovery,* pl. 285, p. 208, 13 Law Lib. 94; *British Ass. of Glass Bottle Manufacturers v. Nettleford* (1912), L. R., A. C. 709, 713, 714.

If the chancellor had followed the indicated practice, the question of the production of the document sought would have depended upon the sufficiency and credibility of the matters set up by way of defence in the further answer under oath or in affidavits. The content of the paper writing, its continued existence, and the control or possession of the document, or the sufficiency and thoroughness of defendant's efforts to obtain its custody, were the principal elements entering into the question of whether its production would be decreed; but, instead of the approved course of requiring further answer or affidavits, the court adopted the method of taking orally the testimony of the witnesses on the part of both the plaintiff and the defendant. The practical difference between the course pursued and that approved by chancery procedure was between an oral defence, which was subject to both cross-examination and disproof; and a written answer under oath or affidavits of defence, without the

opportunity of contradiction or of cross-examination, except on special grounds, by the method of formal interrogatories.

The difference, therefore, was in carrying the procedure for discovery beyond the limits of pleading to oral proof at a hearing, which does not appear to have prejudiced the defendant in this particular instance. The controversy over the true import of the document emphasized the necessity for its production, because the defendant's construction of the meaning of an unproduced paper writing was not equivalent to the production of the writing nor decisive of the question of its relevancy. If, therefore, the chancellor was convinced that the document existed, that it was material to the plaintiff's proof, and that its presentation for inspection would be procured by the defendant by the exercise of a reasonable degree of diligence, it did not matter whether this conviction was produced by the oral or written defence of the defendant. As it is not a legitimate inference that the oral testimony of the defendant before the chancellor in reference to the existence of the document, its custody and control, would have been at variance in its facts with the averments of the defendant's final answer under oath, it is difficult to perceive any substantial injury to the defendant in the result of the procedure before the chancellor. *Miller's Equity*, sec. 362.

4. The inquiries at the hearing before the chancellor were: (1) Was the paper writing sought evidential in the matter of the sale and purchase of the land involved? and, if so, (2) was it possible for the defendant to obtain and produce this paper writing? The first question involved the subsidiary ones of whether the paper writing contemplated the sale and the purchase of the same quantity of land as was conveyed by the deed; and whether the supplemental answer had accurately stated the tenor of the desired paper writing. The record does not present for our consideration any exceptions on the evidence. The parties and their witnesses appeared before the chancellor, and gave their testimony, which convinced him that the paper writing was of

evidential value, and that it had not been sufficiently established that this writing had been lost or mislaid beyond the probability of its recovery. While the record discloses a sharp conflict in the testimony of the parties and their witnesses, it does not afford a sufficient basis for a reversal on the proof. Nor do we find there was error in the order requiring the defendant to file in the equity cause the paper writing in question, if the same can be found by him. The defendant had thus imposed upon him an obligation, whose performance is reasonably limited to the possibility of his production of the paper after the exercise by him of the utmost diligence and effort for its recovery.

It should be borne in mind that the production of the paper writing itself for use in evidence was the primary object of the discovery sought. The proceeding to secure its production is not *per se* admissible to establish the contents of the paper writing, which would have to be shown in accordance with the rules and principles governing the admission of testimony. *Miller's Equity,* sec. 741. Nor was any recital in the order of the chancellor admissible in evidence in any suit at law or in equity between the parties in respect to the substantive rights and obligations growing out of the conveyance of the land here involved.

5. The decree was filed on November 21st, 1925, and the docket entries on the record are carried to January 5th, 1926, and there is no notation of the paper writing having been filed during that period. It is apparent from the record that when the plaintiff brought her action at law in tort against the defendant, she was not aware of the probability of not having at the trial in the law court the written evidence of her alleged contract of sale by reason of its nonproduction. Under such circumstances, and the action at law not having been tried, we do not believe that she should be compelled to pursue her remedy at law for the tort, if she should now desire to proceed in equity to obtain relief by way of an accounting. *Rasst v. Morris,* 133 Md. 187; *O'Keefe v. Irvington Co.,* 87 Md. 196.

The bill sought not only discovery but also general relief, and under the prayer for general relief the court is not confined to what may be specially asked, but may adapt the relief to the nature of the case as stated in the bill; and if the specific relief prayed for cannot be granted, the plaintiff may be given any relief which is consistent with and warranted by the allegations of the bill. *Miller's Equity*, sec. 100. The bill of complaint before the court alleged that, before and at the time of the transaction giving rise to the controversy between the parties, the defendant was her counsel, and possessed **her full confidence**, and that by reason of this relation and her reliance upon it, she accepted his statement that the deed he presented to her for execution was in exact accord with her previous written contract to sell a certain portion of her land to him, and signed and executed the deed without either reading or having it read to her; and that later she discovered that the contents of the deed had been misrepresented to her, and through the fraud and deceit practiced by the defendant upon her, she had actually conveyed **more land of great value than she** had intended or agreed, and that the defendant had later sold and conveyed all of the land so obtained to an innocent purchaser for value, and had refused to account to the plaintiff for the value of the land so fraudulently acquired. Under these allegations, with need of a discovery and with a confidential or fiduciary relation between the parties existing (a), there was a duty on the part of the defendant to account for the value of the excess in quantity of the land conveyed and for any profits from the sale of such excess (b), and the suit was maintainable in equity for both discovery and an accounting for the alleged acts, which, if true, amounted to a breach of trust and fraudulent conduct (c). *Story's Equity Pleading*, secs. 312, 313, 316; *Langdell's Equity Pleading*, secs. 152, 153, 154; *Barroll's Ch. Pr.* 72; *Miller's Equity*, secs. 721, 738; *Dillon v. Life Ins. Co.*, 44 Md. 386, 393; *Union Pass. R. Co. v. Baltimore*, 71 Md. 238, 241; *Rothenburg v. Vierath*, 87 Md. 634, 638; *Bruns v. Spalding*, 90 Md. 349, 360-361; *Heinz v.*

*German Building Assn.,* 95 Md. 160, 169; *Whitman v. United Surety Co.,* 110 Md. 421, 430; *Anderson v. Watson,* 141 Md. 217, 233, 234; *Dombrovski v. Baltimore,* 141 Md. 422, 427; *Lupton v. Am. Wholesale Corp.,* 143 Md. 333, 336, 337; *Legum v. Campbell,* 149 Md. 148; (b) *Ringgold v. Ringgold,* 1 H. & G. 11, 25, 26, 70, 71; *Ricketts & Whittington v. Montgomery,* 15 Md. 46, 53; *Welbourn v. Kleinle,* 92 Md. 114, 129; (a) *Merryman v. Euler,* 59 Md. 588, 591; *Etzel v. Duncan,* 112 Md. 346, 350-351; *McLean v. Maloy,* 136 Md. 467, 512, 513; *Gibson v. Jeyes,* 6 Ves. Jr. 266, 278, 31 Eng. Reprint, 1044, 1050; *Luddy v. Peard,* L. R. 33 Ch. Div. 500, 517, 518; *Macgill v. Macgill,* 135 Md. 384, 394; *Anderson v. Watson,* 141 Md. 216, 234; *Lupton v. Wholesale Corp.,* 143 Md. 333, 337, 338.

It follows from the views expressed, that we find no reversible error in the proceedings. The order passed by the chancellor has the formal defect of not specifying the time within which the defendant's production of the paper would be required. The order should be so modified, after the plaintiff has made her election to proceed with her cause in equity or to prosecute her action at law. The cause will be remanded for further proceedings in conformity with this opinion.

> *Cause remanded for further proceedings in conformity with this opinion, the appellant to pay the costs here and below.*