AGATON-ADACYT LABANOWSKI *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 84, October Term, 1934.]

128

*Decided January 16th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, and SLOAN, JJ.

*Adam S. Gregorius,* for the appellant.

*Hector J. Ciotti, Assistant City Solicitor,* with whom were *R. E. Lee Marshall, City Solicitor,* and *Paul F. Due, Deputy City Solicitor,* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the court.

On the 3rd day of January, 1934, the plaintiff, Agaton-Adacyt Labanowski, filed his bill of complaint against the Mayor and City Council of Baltimore and the members of the Board of School Commissioners of Baltimore, to which the defendants demurred, and, the demurrer being sustained, the plaintiff filed an amended bill whereby he alleged that a certain Elwira Anastazja Labanowski, otherwise known as Elvire M. de Labanowski, died intestate in Baltimore City on or about December 14th, 1914, and that a certain Dr. Frederick J. Hempel had been granted letters of administration on her estate; that on or about May 16th, 1916, the said administrator had paid the entire surplus on her estate to the defendants "on the erroneous assumption the said intestate had left no heirs surving her"; that the plaintiff was her brother and sole surviving heir at law and distributee; that between the date of her death and the present time the plaintiff had been "a resident of Russia, Lithuania and Poland, and because of the unsettled conditions in Europe due to the World War and subsequent disturbances affecting the place of his residence, he was unable to receive any news of his said sister's death until the year 1929, when he immediately started to procure from the official sources in Russia, Lithuania and Poland documentary evidence of his relationship to the decedent, which he was unable to complete until the year 1932"; that "the said estate having been paid to the defendants and being now in their possession under the erroneous assumption that the said intestate had no heirs surviving her is impressed with a trust in his favor"; that, though demand has been made on the defendants for an accounting of the said original sum of $7,472.24, and payment of such sum as may be found due, the request has been refused; and the bill then prayed an accounting and payment.

The defendants demurred, asserting as grounds of demurrer: (1) three year limitation; (2) twelve year limitation; (3) laches; (4) an adequate remedy at law; (5) jurisdiction; (6) want of equity; (7) insufficient at law and in equity; (8) other reasons to be assigned at hearing. At the hearing on the demurrer, a stipulation of counsel was filed in lieu of the exhibits filed with the bill showing the relationship of the decedent and the plaintiff. The demurrer was sustained, and the bill dismissed, and from such an order this appeal is taken.

The authority of the intestate's administrator to pay, and the defendants' right to receive, the estate are sections 808 to 812 of the Charter of Baltimore City, on the last section of which the bill of complaint is based, being: "If the estate of an intestate shall be paid to the Board of School Commissioners under this law, and any legal representatives of the intestate of no remoter degree among collaterals than brothers' or sisters' children, shall at any time appear and prove him, her or themselves to be such legal representatives, the Board of School Commissioners, who received such estate or their successors, if the same shall be in their hands or shall have been applied to the use of the public schools, shall restore the same to such legal representatives out of the school fund under their direction."

The contentions of the defendants are: (1) That the plaintiff could have sued at law in assumpsit, and therefore the three year limitation would bar the claim (Code, art. 57, sec. 1), or (2) if the right should be treated as a statutory specialty, then the twelve year limitation (Code, art. 57, sec. 3) would apply, or (3) that the claim, if entertained in equity, is barred by laches, and that the test of laches should be the period of limitations fixed for a common debt at three years or on a specialty at twelve years, either of which would bar the claim. *Emerson v. Gaither,* 103 Md. 564, 64 A. 26. The contention is also made that the orphans' court is the proper tribunal to decide whether the plaintiff is a distributee of the intestate's estate, but *Dombrovski v. Baltimore,* 141 Md.

422, 118 A. 861, which we shall discuss, is the answer to that contention.

Limitations of actions at law are appointed by statute and not by judicial decree. The defendants took and hold under a statute, and, if they are entitled to keep this woman's estate, it is by virtue of that statute, and what section 812 of the city charter says as to time is controlling here.

There are numerous citations in both briefs of cases and statutes prescribing the time within which claimants of escheated property must assert their claims, and the statutory time has been upheld when the procedure prescribed by law has been observed. In this case section 812 grants the right to those "of no remoter degree among collaterals than brothers' or sisters' children who shall at any time appear and prove him, her or themselves to be such legal representatives," and the estate shall be restored to such claimants. The appellees have cited several cases which hold that "at any time" means within "a reasonable time," but in none of those cases do we find any words qualifying the words "at any time," such as we think are found here. The section says that, if claimants "of no remoter degrees among collaterals than brothers' and sisters' children, shall at any time appear," then obviously the outside limit of time would be the lifetime of those coming within those degrees, and, when there are none within those degrees or they have become extinct, there are and can be no claimants, and the title of the school board to the estate becomes ablute. Then there is another clause which appears to us to bear some relation to the question of time, and that is that it makes no difference whether the estate "shall be in their hands or shall have been applied to the use of the public schools," it shall be restored "to such legal representatives" within these degrees. This construction is also justified by the opinion by Judge Offutt in *Dombrovski v. Baltimore*, 141 Md. 422, 425, 118 A. 861, 862, when he said: "We are also satisfied that the property or money which the appellee received was impressed with a trust in

favor of such persons as might under the statutes of distribution be entitled thereto." In other words, the school board could have the use of the money until a claimant within the provisions of the act asserted his claim to the estate. It could not under the act be trustee and *cestui que trust* at the same time. One of the provisions construed in the *Dombrovski* case was section 136 of article 93 of the Code of 1904, now section 141 of the Bagby Code of 1924, but what was said with regard to it is equally applicable to section 812 of the city charter, so far as it relates to the capacity in which such funds are held by the school board of Baltimore City. If the estate in this case is a trust, and the *Dombrovski* case says it is, then it means that, pending the appearance of a claimant within the prescribed degrees, and within the time limits to be ascertained from the existence of claimants within those degrees, the estate is held for the benefit of such claimants.

The only occasion for applying the rule that claims should be made within a reasonable time is when a claimant no more remote that brothers' or sisters' children fails or neglects, after notice of the payment to the school board, for an unreasonable time to make claim, and this is in accord with the decisions of this court when the defense of laches is made. In *Sears v. Barker,* 155 Md. 323, 330, 141 A. 908, 911, the rule peculiarly applicable to the facts of this case, as taken from 21 *C. J.* 244, was: "As a general rule laches cannot be imputed to one who has been justifiably ignorant of the facts creating his right or cause of action, and who therefore has failed to assert it; or as the rule is sometimes expressed, it is an essential element of laches that the party charged with it should have had knowledge or the means of knowledge of the facts creating his right or cause of action." Of the delay charged against Mrs. Barker in that case, who claimed after five years of ownership of stock, in the purchase of which she claimed to have been swindled, it was said: "Until it developed that the stock had no value at the time it was purchased, and she had been

deceived in the purchase of it, and her suspicions had been so aroused as to put her on inquiry, she could not be chargeable with laches. When that time arrived, she might be guilty of laches, if she had waited an unreasonable length of time thereafter to pursue her remedy. Only upon a discovery of the facts would limitations begin to run or the appellee be bound by her neglect or laches."

Now what do we find in this case to bring it within the rule as stated in *Sears v. Barker,* and in arriving at a conclusion we must assume, as the demurrer from its nature concedes, that, although the intestate died in 1914, her brother, the plaintiff, did not hear of her death until in 1929, when he immediately started to procure from the official sources in Russia, Lithuania, and Poland documentary evidence of his relationship to the decedent, which he was unable to complete until the year 1932. According to the stipulation, he obtained the first evidence April 30th, 1930, and the last March 21st, 1933. The original bill was filed January 3rd, 1934. We are not prepared to say that this statement of fact discloses any lack of diligence on the part of the plaintiff after he became aware of his rights; in fact, because the sources of information were so widely scattered, it shows considerable activity on his part to secure the evidence, without which it would have been useless for him to have asserted his claim.

The defendants strongly urge in defense of their position the rule of laches as laid down in *Demuth v. Old Town Bank,* 85 Md. 315, 37 A. 266, 268, and adopted in *Roberto v. Catino,* 140 Md. 38, 43, 116 A. 873, to be, "such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. * * * Obviously, then, there must be a legal duty to do some act, a failure to do that duty, and attendant circumstances which cause prejudice to an adverse party, before the doctrine can be successfully invoked." The only way in which the defendants could be prejudiced would be that the money

had been spent, and, as urged at the argument, that it would be a great hardship to levy the same and thus add to the present burdens of the city. When the defendants accepted this woman's estate, they now know they got something which did not belong to them, and, while they had an apparent legal right to take it, the payment was conditioned on the terms of section 812 of the city charter, and one of them was that, if a qualified claimant appeared and proved his relationship to the intestate, the estate should be restored to him, no matter whether they had it or spent it, which is the answer to the defense of laches on the ground of prejudice to the defendants.

In our opinion, the plaintiff has not shown such lack of diligence in the prosecution of his rights, as alleged in his bill of complant, as to forbid him to proceed with his suit, and the case will be remanded.

*Decree reversed, with costs, and case remanded for further proceedings.*