(No. 13579.—Judgment affirmed.)
GEORGE G. BRANDENBURG *et al.·* Appellees, *vs.* THE BUDA COMPANY, Appellant.

*Opinion filed October 22, 1921.*

1. EQUITY—*bill for discovery in aid of suit at law must show prima facie cause of action.*  A bill for discovery in aid of a suit at law must show, at least in a *prima facie* manner, that the complainant has a good cause of action, and if it is clear that the action is not maintainable at law, equity will not entertain the bill for discovery, but if the point is fairly open to doubt a court of equity will grant the discovery and leave it to a court of law to adjudicate upon the legal rights of the party seeking recovery.

2. SAME—*section 9 of Evidence act does not limit jurisdiction of equity to entertain bill for discovery.*  Section 9 of the Evidence act, authorizing the court to compel the production of books and writings as evidence in actions at law, does not abridge or affect the jurisdiction of equity to entertain a suit for mere discovery of evidence in aid of an action at law, even though the complainant could have compelled the production of the same documents in his suit at law and have obtained therefrom all the facts as fully as by bill of discovery.

3. SAME—*concurrent jurisdiction conferred on a court of law does not exclude jurisdiction of equity.*  Where jurisdiction is vested in a court of equity and a like jurisdiction is conferred by statute on a court of law the presumption is that it was designed to be concurrent and not exclusive unless the court of equity is prohibited or limited in its exercise by the language of the act, and the existence of the legal remedy does not preclude equity from assuming jurisdiction and affording relief.

4. SAME—*bill for discovery is proper although complainant has other sources of proof.*  A bill for discovery in aid of a suit at law is proper not only when the complainant is without other means of proof but also in support of his other evidence or even to dispense with the necessity of other evidence, and it is not a good objection that the interrogatories seek facts well known to the complainant and which are capable of proof by obtainable witnesses.

5. CONTRACTS—*construction of time provision for termination of contract.* Ordinarily, where a contract provides that it is to extend to a certain date, the word "to" means "until" and excludes the date following it as a part of the contract, but where the contract is to take effect from its date and is to continue to a certain date the latter date is not excluded but is to be considered as the last day, and the contract will expire at midnight of that date.

6. SAME—*meaning of word "thereafter" in a time provision.* The word "thereafter" in a time provision for the duration of a contract is usually used to avoid the repetition of a preceding date or event which would follow the word "after" and refers to a time or period following the event or date.

7. SAME—*meaning of word "on," when applied to date.* Where the word "on" is used in connection with the designation of a date or calendar division of time it is often given the meaning of "in" or "during."

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. F. A. SMITH, Judge, presiding.

JONES, ADDINGTON, AMES & SEIBOLD, for appellant.

JOHN T. RICHARDS, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellees, George G. Brandenburg and Joseph I. Brandenburg, co-partners doing business as Brandenburg & Co., filed their bill in equity in the circuit court of Cook county against appellant, the Buda Company, a corporation, for discovery only of certain facts in aid of their suit at law on a written contract theretofore brought by them in the same court against it. Appellant filed a general and special demurrer to the bill, which was overruled by the court, and appellant was directed to make discovery as prayed by the bill. On appeal to the Appellate Court for the First District the decree was affirmed and a certificate of importance and appeal were granted to this court.

The bill sets up the written contract *in hæc verba,* by the terms of which appellees were made the exclusive selling agents of appellant's motor vehicle products. There are just three clauses in the contract that are material to the consideration of the controversies in this appeal, the thirteenth and fifteenth of which read as follows:

*"Thirteenth*—It is further covenanted and agreed that at the end of a period of every three months, dating from the date of this contract, the parties of the second part shall have the right to examine the books of the party of the first part (the Buda Company) for the purpose only of ascertaining the amount of shipments made by the party of the first part, and for the purpose only of checking up and verifying statements rendered by the party of the first part to the parties of the second part hereto.

*"Fifteenth*—It is further covenanted and agreed by and between the parties hereto that this contract shall take effect from its date and shall continue to July 1, 1916, and from year to year thereafter unless either party may wish to terminate this contract, which may be done on any year thereafter by giving the other party a notice in writing of their intention to so terminate this agreement sixty days prior to July 1 of any year thereafter, said cancellation to take effect provided all payments are made sixty days after date of cancellation."

The third clause material to the contract provides that the services to be rendered by the parties of the second part shall be paid by a commission of five percentum on the net amount of all products shipped during any year up to and including $500,000, and it is further provided that if such net amount for any year shall amount to $700,000 the commission shall be four and one-fourth percentum; if it amounts to $800,000, four percentum; if it amounts to $900,000, three and three-fourths percentum; if it amounts to $1,000,000, three and one-half percentum; if it amounts to $1,100,000, three and one-fourth percentum; and if it

amounts to $1,200,000 or over, three percentum. · This clause ends with these words, "It is understood that all periods of years end July 1."

The bill alleges performance by the appellees of the contract up to July 1, 1916, and that from and after that date appellant utterly failed and refused to carry out and perform the agreement on its part and sought to terminate the contract on that date, and for that purpose gave appellees notice April 21, 1916, stating therein that the contract was thereby terminated by it, the termination to take effect "on the expiration of the five-year period of said contract, July 1, 1916." The bill further alleges that because of appellant's refusal to carry out the contract, appellees instituted on January 2, 1917, a suit at law to recover from appellant $250,000 damages suffered by them by said breach of the contract, and that said suit in assumpsit is still pending, and that the material facts necessary to the maintenance thereof can be obtained only by an examination of appellant's books of account, etc. The appellees prayed discovery merely by answer to fifteen interrogatories appended to the bill.

Appellant's main contention is that the contract was performed to July 1, 1916, and was terminated by it at midnight on June 30, 1916, by the giving of said notice. It therefore further contends that by reason of that fact the bill of appellees on its face discloses that they have no cause of action and that the demurrer to the bill should have been sustained. Appellees contend, on the other hand, that the contract was not terminated by such notice and could not be terminated by either party before July 1, 1917, at midnight.

The allegations of a bill for discovery must show that the discovery prayed will be of service to the complainant in his lawsuit. He must therefore show, at least in a *prima facie* manner, that he has a good cause of action in his suit at law. (1 Pomeroy's Eq.—3d ed.—sec. 198.) If it is clear that the action is not maintainable at law by complainant a court of equity will not entertain his bill for discovery in support

of it.   If the point be fairly open to doubt or controversy a court of equity will grant the discovery and leave it to a court of law to adjudicate upon the legal rights of the party seeking recovery.   (3 Story's Eq.—14th ed.—sec. 1941.) We are therefore faced by the necessity on this appeal to pass upon the question whether or not appellees' bill does disclose *prima facie* that they have a good cause of action at law, as they are not entitled to discovery unless they have made that *prima facie* showing.   We decide this point with the express reservation that the decision thereof is not binding on either party in the lawsuit, as there may be in existence some extraneous facts not appearing in the record now before us that might lead to a different interpretation of the contract.

   If the interpretation of the contract in this case is to be governed solely by the words found in the contract, unaided by any extraneous facts whatever,—and that is the exact situation, as no such extraneous facts are alleged,—our decision must necessarily be that the bill does *prima facie* disclose that the appellees have a good cause of action at law.   By the fifteenth clause of the contract the contract was to be effective from its date, October 19, 1911, to July 1, 1916, and from year to year thereafter unless either party should desire to terminate it.   It is clear from this part of the fifteenth clause that if neither party desired or attempted to terminate the contract it would continue to July 1, 1916, and from year to year thereafter, indefinitely, until it was terminated by notice by one of the parties.   It is true, ordinarily, that where a contract simply provides that it is to extend to a certain date, the word "to," as contended by appellant, means until, and excludes the date following it as a part of the contract.   On the other hand, where a contract is to take effect from its date and continue to a certain other date, the latter date is not excluded but is to be considered as the last day of the contract.   (*Higgins* v. *Halligan,* 46 Ill. 173.)   So in this case, the contract is to continue from

October 19, 1911, to July 1, 1916, and from year to year thereafter until terminated. All years of this contract after July 1, 1912, therefore end at midnight of July 1 and begin July 2. This is the natural meaning and interpretation of the fifteenth clause of this contract, and the sixteenth clause is absolutely confirmatory of that interpretation, which clause provides that "all periods of years end July 1,"— that is, at midnight of July 1. It is clear, therefore, that clauses 15 and 16 are not contradictory, as contended by appellant, but entirely harmonious.

The contract may be terminated only in accordance with the provision of the latter part of clause 15, which is, that it "may be done on any year thereafter by giving the other party a notice in writing of their intention to so terminate" it, sixty days prior to July 1 of any year thereafter. The word "thereafter" is a word that is usually used to avoid the repetition of a preceding date or event, preceded by the word "after," and refers to a time or period following the event or date. So this part of the contract worded in full according to its meaning would read thus: "This contract may be terminated on any year after July 1, 1916, by giving to the other party notice in writing of their intention to so terminate this agreement sixty ·days prior to July 1 of any year after July 1, 1916." It can only be terminated "on any year thereafter," the word "on," in this connection, meaning "in." "The word 'on' is often given the meaning of 'in' or 'during,' and this meaning of the word is well recognized when used to designate a date or calendar division of time." (2 Elliott on Contracts, sec. 1821.) The contract, therefore, could not be terminated earlier than the year 1917, and as all years of this contract begin with July 2, the first sixty days' notice that would be effective to terminate the contract would have to begin sixty days prior to July 1, 1917, which latter day is the last day of the contract year 1917.

It is contended by appellant that section 9 of chapter 51 of our statutes has abolished or limited the jurisdiction of

courts of equity in matters of discovery, and that as appellees have a complete remedy under that section the demurrer of appellant should have been sustained.  That section provides: "The several courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue." (Hurd's Stat. 1917, p. 1485.)  Undoubtedly, under this section of the statute appellees, upon making the proper showing, could have compelled appellant to produce its books and have obtained therefrom all the facts contained in the books as fully as by bill of discovery. *(Swedish-American Telephone Co.* v. *Casualty Co.* 208 Ill. 562; *Denison Cotton Mill Co.* v. *Schermerhorn,* 257 id. 128.)  Appellant's contention is based upon the theory that the statute in question furnishes a complete remedy at law and therefore ousts the jurisdiction of equity.  The bill in this case only asks for discovery in aid of the lawsuit.  We think that the weight of authority sustains the proposition that such a statute does not abridge or affect the auxiliary jurisdiction to entertain suits for mere discovery of evidence and production of books and documents and that such equitable jurisdiction is not specifically abolished or limited by the statute itself.  (1 Pomeroy's Eq.—3d ed.—sec. 193.)  There are other authorities that hold to the contrary, but such holdings are usually found in cases in chancery brought for both discovery and relief, wherein the rule differs from that in a mere suit for discovery.  (1 Pomeroy's Eq.—3d ed.—sec. 197, and note 2· on p. 258.)  In *McNab* v. *Heald,* 41 Ill. 326, we distinctly held that where jurisdiction is vested in a court of equity and a like jurisdiction is conferred by statute on a court of law, the presumption is that it was designed to be concurrent and not exclusive unless the court of equity is prohibited or limited in its exercise by the language of the act, and that such a legal remedy does not preclude a court

of equity from assuming jurisdiction and affording relief. The statute in question neither abridges nor limits the jurisdiction in equity, and the equity jurisdiction to maintain bills for discovery only in aid of a lawsuit still exists as a concurrent remedy with the statute. Neither the statute, nor the provision of clause 13 of the contract which gives appellees the right to examine appellant's books, has the effect to deprive appellees of their remedy by bill of discovery.

In bills for discovery only in aid of a lawsuit the complainant is entitled to discovery not only in respect to facts which he cannot otherwise prove, but also as to facts the admission of which will relieve him from the necessity of adducing proof from other sources. In other words, a suit for discovery is proper not only when the complainant therein is without other means of proof, but also in aid of his other evidence, or even to dispense with the necessity of other evidence. *Earl of Glengall* v. *Frazer,* 2 Hare's Ch. 99; *Brereton* v. *Gamul,* 2 Atk. 240; *Montague* v. *Dudman,* 2 Ves. Sr. 397; *Peck* v. *Ashley,* 12 Metc. 478.

Under the foregoing authorities appellant's objections to the first seven interrogatories on the ground that they seek facts well known to appellees and capable of proof by witnesses obtainable by them must be overruled. Objections to several of the other eight interrogatories on the ground that they call for matters not within the issues of the lawsuit and because they are repetitions of other questions must also be overruled. These questions inquire in detail for the total amount of all motor vehicle products shipped by appellant during various years of the contract, and for the total amount of money, etc., paid to appellant for motor vehicle products for similar years, and kindred questions relating to the business transacted between the parties. We think such questions are relevant, or might become relevant, to prove damages or losses to the appellees although such questions pertain to years prior to the year beginning with July 1, 1917. In other words, the answers

to such questions might throw light upon or furnish a basis for estimating the amount of the business that would have been transacted between the parties for the year beginning with July 2, 1917, had they continued doing business during that year. The admissibility of this evidence really becomes a question for the law court to settle, and we are not disposed to hold the questions immaterial or irrelevant or competent and admissible but will leave those questions for the law court to pass upon. We make one suggestion, however, with reference to these questions. They generally make inquiries for years beginning July 1, while, as a matter of fact, the years of this contract begin July 2, as we have already held. The questions are therefore not accurate for the purpose of obtaining any year's results in the performance of the contract. The lower court, however, would be amply advised as to the admissibility of evidence, and much more so than would be this court, as the issues will be made up and the relevancy of evidence more readily perceived when the whole case is presented to the law court. We do not, however, want to be understood as holding that proof of the volume of one year's business prior to the 1917 year of the contract would be sufficient to establish proof of the amount of loss of profits to appellees for the year 1917. There is a well defined rule for establishing loss of profits or amount of profits for any year by proof of the profits or business of preceding years. In other words, proof of the profits for one year of the contract prior to 1917 would not necessarily establish the correct proof of the loss of profits to appellees for the 1917 year by reason of appellant's failure to perform the contract.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*