## JOSEPH C. JOHNSON. *v.* MARYLAND TRUST COMPANY

[No. 20, April Term, 1939.]

558

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Eldridge Hood Young,* with whom were *Young & Crothers* on the brief, for the appellant.

*Frederick J. Singley* and *Frederick J. Singley, Jr.,* with whom were *Hinkley, Burger & Singley* on the brief, for the appellees.

MITCHELL, J., delivered the opinion of the Court.

By the amended bill of complaint filed in this case, Joseph C. Johnson, the appellant, seeks discovery, under oath, of certain assets alleged to be held by the Maryland Trust Company, a banking institution of the State of Maryland, the appellee, which, the bill alleges, were held by the appellee as trustee under a deed of trust from the Park Mortgage and Ground Rent Company, (hereinafter referred to as the Mortgage Company), dated March 15th, 1928.

The bill is filed against the appellee in its corporate capacity, and also in its capacity as trustee under said deed of trust, and, in addition to the discovery sought, the prayer for relief is for an accounting with the complainant, as holder of certain notes secured by the deed of trust, the payment of the balance now due on said notes with interest thereon, out of the funds pertaining to the trust estate created by said deed, and that the deficiency, if any, be decreed to be paid by the appellee, in its corporate capacity, as contradistinguished from its capacity as trustee.

As amended, the bill, in substance alleges:

(a) That on March 15th, 1928, the Mortgage Company executed the deed of trust, and that under its terms the trustee agreed to hold sundry securities as collateral for the payment of certain trust notes which the Mortgage Company designed to issue in accordance with the provisions of the deed of trust.

(b) That on or about July 31st, 1931, the appellant purchased, to the extent of $120,000, certain "Series B. Trust Notes," which were duly certified to, and authenticated by, the appellee, in form prescribed by the deed of trust.

(c) That the notes were purchased from the Park Bank, then a banking institution under the laws of the State of Maryland, and were payable in one year from date, but that, nevertheless, the Park Bank, at the time of the sale of the notes, entered into an agreement with the appellant to repurchase the notes before maturity, upon thirty days notice to it, at their face value.

It is then set forth that during the spring of 1932, the appellant became concerned as to the financial status of both the Mortgage Company and the Park Bank, and thereupon caused Douglas Gorman, as his representative, to interview Carlyle Barton and Jervis Spencer, Jr., alleged agents, attorneys, officers and directors of the appellee, for the purpose of ascertaining the stability and value of the above notes; that at said interview Messrs. Barton and Spencer represented that the notes were "good," that Webster Bell, president of the Mortgage Company, was "O. K.," and that the Park Bank then had a line of credit with appellee which was "not exhausted." In addition to the above statements, the bill further alleges that his representative was, at the above interview, informed by the alleged representatives of the trustee that the latter required greater marginal security in all mortgages deposited with it as collateral, for the payment of the issue of "Series B. Trust Notes," than that actually required by the provisions of the deed of trust, which latter representations, it is charged, were not true in fact.

The theory of the complaint is that, upon the faith of the above interview, the appellant was so lulled into a confidence in the security of his investment as to cause him to forego giving the required thirty days notice to the Park Bank, and demanding the payment of the notes, prior to their maturity, under his contract with the bank; and, furthermore, as late as July 31st, 1932, on which date the notes he held became due, to renew the indebtedness evidenced by them for an additional period of thirty days. After allegations to the above effect the appellant then sets forth in his bill, that "before the expiration of the said thirty days and at the time thereof to wit: on or before July 31st, 1932, the said Park Bank and the said Park Mortgage and Ground Rent Company were insolvent, and before the said thirty days thereafter were judicially so declared to be."

Another allegation found in the bill is that, on or about the date on which it was publicly announced that a receiver had been appointed to assume charge of the affairs of the Mortgage Company, one L. S. Zimmerman, an alleged agent of the appellee, represented and asserted that the trustee then had in its possession property, applicable to the payment of said "Series B. Trust Notes," of the value of $250,000 in excess of the face value of such notes as were then outstanding, and that, notwithstanding the representation and assertion that the appellant would be paid the sum of $120,000 in accordance with the tenor of the notes he then held, only $96,000 on account of said notes had been paid to him by the trustee, which sum, plus a payment to him by the receiver of the Park Bank of $8385.13, or a total of $104,385.13, represented the amount then collected by the complainant on his renewal notes.

Finally, the appellant prays that the trustee discover, under oath, property in its custody of the alleged value of $250,000 in excess of the face value of the outstanding "Series B. Notes," and in addition thereto (a) the appraised or assessed value of all property held by the trustee under the deed of trust; (b) all sums of money,

property or other things of value which was on deposit or held by the Park Bank as agent of the trustee, on or about August 11th, 1932, and any dividends or payments received by the trustee on account thereof; (c) account with and pay to the appellant the sum of $120,000 plus interest and expenses, less the sums received thereon, as above indicated; and (d) that a decree of the court for the amount so ascertained to be due the appellant be passed, the same to be paid by the trustee out of the trust funds pertaining to said trust, and that the deficiency, if any, be decreed to be paid to the appellant by the appellee in its corporate capacity.

To the aforegoing amended bill the appellee demurred, the grounds of the demurrer being that the complainant has not stated a case which entitles him to relief in equity, that the allegations of the amended bill are vague, general and inconclusive, and that the appellant is guilty of laches and is estopped from seeking the relief prayed in the bill.

The appeal is from a decree of the Circuit Court No. 2 of Baltimore City, dismissing the bill, after the complainant had elected not to further amend the same.

Under the terms and conditions of the deed of trust, a copy of which is filed as an exhibit with the amended bill, and the provisions of which thereby become subjects for consideration in the disposition of the demurrer, the duty imposed upon the trustee is clearly set forth, and its liability is definitely defined and limited.

By section 2 of article 2 of the above instrument, the Mortgage Company is required to convey, transfer, and deliver additional security to the trustee whenever the security then on deposit with the trustee as collateral for outstanding notes of the Mortgage Company becomes impaired by reason of shrinkage in the market value thereof; but, in this connection, it is, nevertheless, specifically set forth that the above provision shall be construed as a covenant of the Mortgage Company only; and that "the trustee shall be under no obligation to inquire into any changes that may occur in the market

value of said approved securities or to give any notice to the Company relative thereto, and shall have no responsibility with respect to any such changes."

To the same effect, section 1 of article 6 of the deed of trust among other things provides that: "The trustee is not responsible nor liable for the genuineness, validity, value or collectibility of any mortgages or approved securities assigned or pledged on ground rents conveyed or pledged hereunder. * * * Nor shall the trustee be in any way liable for the breach on the part of the company, of any of the covenants herein contained, nor shall the trustee be answerable in any way, except for its own wilful default or gross negligence."

From the aforegoing significant provisions of the deed of trust, the conclusion is inevitable that the trustee never was, and never intended, by its acceptance of the trust, to assume liability for either depreciation in securities, or in the value of real estate which might, from time to time, be pledged as collateral or security for notes which the Mortgage Company designed to issue and dispose of upon the faith of such collateral. In other words, by the express terms of the deed of trust, the trustee was only answerable to holders of outstanding obligations of the Mortgage Company, "for its own wilful defaults or gross negligence," and of course, for good faith in the administration of its trust.

The deed of trust also provided that, until otherwise notified, the Mortgage Company, as agent of the trustee, was authorized to receive payments upon the principal of the mortgages held by the trustee at the time any of said payments were made, with direction to pay over such payments to either the trustee or its appointed agent. It named the Park Bank as its appointed agent (subject to the right of the trustee at any time to revoke such appointment by written notice) to receive from the Mortgage Company such collections as the latter might make on behalf of the trustee, and it specifically provided that: "The trustee shall not be liable for any failure on the part of any such agent to turn over and account for

the sums so collected, whether due to the insolvency of the agent, the dishonesty of any of its employees, or for any other cause whatsoever."

No allegations are found in the bill charging the trustee with either fraud or the concealment of assets pertaining to the trust estate. But to the contrary, a state of facts is alleged therein to the effect that the Mortgage Company is in the hands of a receiver, and that since the receivership the trustee has paid the complainant $96,000 on account of the notes secured by the deed of trust. Furthermore, there is no allegation that the payments so far made by the trustee, on account of the indebtedness, are final, and that, in due course of the administration of its trust, further distributions and a full accounting will not be made by the trustee to the complainant.

Bearing in mind that the trustee did not negotiate the sale of the mortgage notes to the complainant, and that the latter owned them for nine months prior to the alleged interview between his representative and the above named officials of the corporate trustee, the absence of motive for the practice of fraud or deception upon the complainant on the part of the trustee is conspicuously apparent. Nor can we reconcile the subsequent action of the complainant in renewing the notes with the allegations of his bill. This, however, he did three months after the interview, of his own accord and upon his own terms, without any further conference with representatives of the trustee.

At best the interview was an informal one, and if it did, as the appellant contends, result in his decision to refrain from calling the payment of the notes prior to their maturity, it would require a strained construction to warrant the conclusion that he was justified in renewing them when they became due, without at least conferring again with the trustee.

According to the bill, the opinion of the officers of the trustee was sought and obtained, not only as to the collateral held by the trustee as security for the notes, but also with reference to the financial status of the Park

Bank, and of its president, Mr. Bell; and, conceding for the purposes of demurrer that the interview influenced the complainant, to his own detriment, by no stretch of imagination can it be held that any statements of the officials of the trustee with reference to the Park Bank or its president were within the scope of their authority and binding upon their principal.

The demurrer admits the facts set forth in the bill, so far as the same are relevant and well pleaded, but does not admit the conclusions of law drawn by the complainant from facts stated in his bill. *Miller's Equity Procedure*, sec. 133; *Phelp's Juridical Equity*, sec, 58.

Corporations must, from necessity, act and contract through the aid and by means of individuals, and such individuals may be those holding corporate offices, or agents properly appointed by such officers. Directors, in the broad sense, are merely agents of the corporation. 13 *Am. Jur.* 864. *Jackson v. County Trust Co.*, 176 Md. 505, 6 A. 2nd 477.

But the power of an officer or agent of a corporation to bind the corporate body is governed by the general law of agency; the underlying principles are the same; and hence the acts of corporate officers and agents are binding upon the principal when, and only when, they are performed within the scope of their authority, either express or implied. 7 *R.C.L.* p. 620.

Misrepresentations, by whomsoever made, must relate to facts, or matters of fact, and not mere matters of expectation or opinion. 1 *Perry on Trusts*, 7th Ed., sec. 173. And assuredly the alleged statement made by Mr. Zimmerman after the failure of the Mortgage Company, with reference to the value of the security then held by the trustee, cannot be construed other than mere opinion or estimate of value. It is not alleged that the latter statement was even directed to the complainant, and logically it could not have influenced him against his interests in any manner, for the reason that the obligor of the notes was then in receivership. It may or may not have been true, but, assuming that it was an accurate

estimate of the alleged excess value of the security over and above the outstanding notes at the time the statement was made, it would not follow that the value of the particular securities then held by the trustee did not afterwards depreciate below the amount of the outstanding notes.

As was said by the learned chancellor below, with whose conclusion we are in accord: "Any opinions given by any officer of the defendant therefore as to the collateral held by the defendant, were not given in the line of duty as imposed upon the trustee by the deed of trust. If false statements (as distinguished from mere expressions of opinion) were made by any officers of the defendant, they were not statements which could be said to be within the scope of the`duty of the trustee, and whatever right of action any such statements may have afforded the plaintiff, such right of action is independent of the deed of trust and of the relationship of trustee and beneficiary as established by the instrument. There is an adequate remedy at law for deceit, and if the action is based on that ground, there is no need whatsoever for an accounting, because the defendant is liable, no matter what the value of the securities held as collateral by it under·the deed of trust,·aforesaid, may be."

Sections 106 and 107 of article 75 'of the Code provide for the method of procuring the production of books, papers and testimony in a court of law, and, where there is ample remedy at law, courts of equity will not interpose. *Becker v. Lipps Co.*, 131 Md. 301, 101 A. 783. It is true that the original jurisdiction of courts of equity in this state has not been abolished by the above statutory provisions, but, at least, they have greatly lessened the use of bills for discovery. And although the bill now under consideration prays for both discovery and relief, we are of the opinion that both remedies are easily available to the appellant in a court of law, and that, under the facts as alleged, the jurisdiction of equity cannot be successfully involked. *Hill v. Pinder*, 150 Md. 397, 133 A. 134.

Holding the view, therefore, that, for reasons hereinbefore set forth, the demurrer was properly sustained, it becomes unnecessary to discuss or consider the other questions raised by the same.

*Decree affirmed, with costs to the appellee.*