This record contains three appeals from orders of the Circuit Court No. 2 of Baltimore City, overruling separate demurrers, filed by the three appellants who were defendants in an amended and supplemental bill, filed against them on July 6, 1940, by the appellee.
On February 5, 1940, the appellee, Samuel L. Bank, filed a bill of complaint against the appellants, his wife Beatrice Bank, and her parents Jacob A. Pleet and Dora Pleet. The bill sought an injunction to restrain his wife from prosecuting to a conclusion a suit for an absolute divorce from the appellee, which she had instituted in a Florida court; and to restrain her parents from assisting, abetting, supporting and co-operating with his wife in the said divorce proceeding. But before proper process could be served upon Beatrice Bank, who was then in Florida, a decree was passed by the court in Florida granting her an absolute divorce.
The appellee secured an order from the Circuit Court No. 2 of Baltimore City permitting him to file an amended and supplemental bill, which, accordingly, was filed on July 6, 1940. The amended and supplemental bill is against the same parties. The relief sought differs from that sought in the original bill. After the filing of the original bill and before the filing of the amended and supplemental bill, the divorce was granted by the court in Florida. The relief sought in the amended and supplemental bill is: (1) that the Florida divorce be declared void; (2) that the appellants Jacob A. and Dora Pleet make discovery of all moneys expended by them on account of, or in connection with, the Florida divorce cause, and the support and maintenance of the said Beatrice Bank in Florida, and later in New Jersey; (3) that the said Jacob A. and Dora Pleet be enjoined from supporting, inducing and prevailing upon the said Beatrice Bank to remain away from the appellee.
Each of the appellants demurred to the amended and supplemental bill. The grounds of the demurrer of Beatrice *Page 257 
Bank are: (1) That the amended and supplemental bill is multifarious; (2) that the allegations are uncertain and indefinite; (3) that many of the averments of the bill have been determined, and are res judicata. The grounds of the demurrers of Jacob A. and Dora Pleet are practically the same as those of Beatrice Bank, with the additional ground that a court of equity may not enjoin a parent from giving financial aid to a dependent daughter.
Each of the demurrers were overruled, and these appeals were entered.
The amended and supplemental bill is very long, and the original bill, and all proceedings in connection with it, either are included in the amended bill, or filed as exhibits. It alleges that the appellee, and the appellant Beatrice Bank were married on June 10, 1934, and now are, and have always been, residents of Baltimore City, Maryland; that on or about August 7, 1937, the appellant, Beatrice Bank, without just cause, persuaded, induced and prevailed upon by her parents, the appellants Jacob A. and Dora Pleet, abandoned and deserted the appellee, and the abandonment still continues. Also, it is alleged that the appellee, on November 11, 1938, obtained a judgment for $5,000, in the Superior Court of Baltimore City, against the appellants Jacob A. and Dora Pleet, for the alienation of the affections of Beatrice Bank, which judgment has been paid and satisfied; that the appellant, Beatrice Bank, aided and abetted by the appellants Jacob A. and Dora Pleet, obtained a divorce in Florida, on February 10, 1940; that the said divorce was planned, financed and abetted by the appellants Jacob A. and Dora Pleet, and they are continuing to prevail upon Beatrice Bank to remain away, and live apart, from the appellee, and to provide her with financial means to live now in the State of New Jersey.
The particular questions raised by the demurrers now before us are: (1) Whether the amended and supplemental bill is multifarious; (2) whether the appellee is *Page 258 
entitled to discovery, and (3) whether an injunction may be issued, as prayed against parents, enjoining them from maintaining and supporting a dependent daughter, and, as alleged, influencing her to live apart from her former husband.
The briefs devoted a great deal of argument, and cited many authorities, in support of questions about which there is no serious dispute. The fact that a suit at law for alienation of affections will lie against parents, as against third parties, is universally accepted. Also, the jurisdiction of a court of equity in this State to consider a bill for the annulment of a divorce obtained in another State, provided proper allegations of facts are made, is well settled.
In considering the question of multifariousness it will be observed that that question more often has been considered, and discussed by the courts of this country, under varying circumstances, than any other subject of equity procedure, and it is one upon which there is less uniformity of opinion. There is so much confusion about it that the great majority of decisions agree that no fixed rule has been or can be adopted, which will apply in all cases. The determination of the question must be left to the discretion of the chancellor, to be exercised with regard to the particular circumstances of each case. Emerson v.Gaither, 103 Md. 564, 572, 64 A. 26, 8 L.R.A. (N.S.) 738, 7Ann. Cas. 1114; Whitaker v. Coudon, 130 Md. 234, 100 A. 279;American Surety Co. v. Noble, 154 Md. 150, 140 A. 42; Whitmanv. United Surety Co., 110 Md. 421, 72 A. 1042; Roth v.Stuerken, 124 Md. 404, 92 A. 808; 10 R.C.L., Sec. 190, p. 428; 21 C.J., Sec. 427, p. 408; 19 Am. Jur., Equity, Secs. 246-250, pp. 190-193.
The test is, that the rule "must be applied to the facts of each particular case in the light of the general principles regulating singleness in pleading which forbids the blending in the same suit entirely distinct and separate matters relating to different parties." Whitman v. United *Page 259 Surety Co., supra [110 Md. 421, 428, 72 A. 1045]; Ruhe v.Ruhe, 113 Md. 595, 599, 77 A. 797. And in Gaither v.Bauernschmidt, 108 Md. 1, 8, 69 A. 425, 428, it is said: "Desirable as it may be to avoid a multiplicity of suits and to do complete justice to as many parties as possible in one litigation, the rules of equity pleading, which forbid uniting in one bill defendants, some of whom are not interested in the whole of the relief sought, cannot be disregarded in framing bills of complaint. The `parties in interest' whose rights can be completely disposed of in one litigation in equity comprise only those persons who can be united in a single bill of complaint in the due course of equity procedure." Reckefus v. Lyon,69 Md. 589, 590, 16 A. 233, 530.
Applying the rules as above stated, to the amended and supplemental bill in this case which seeks against one defendant to have a divorce declared void, and against two defendants discovery and an injunction, would seem to bring this case well within the ruling in Carey v. Mercantile Credit Co.,159 Md. 387, 150 A. 806, 807, where it was said: "There would be no common ground of litigation for all of them. The remedies sought are different, and effect different persons. * * * the combination of them all in one suit is too likely to involve confusion. * * *" Mitchell et al. v. Frederick et al.,166 Md. 42, 53, 170 A. 733, 92 A.L.R. 1412; Reckefus v. Lyon, supra. In 19 Am. Jur., Equity, Sec. 252, p. 194, it is said, in speaking of uniting two or more causes of action, that it must be determined with reference to "the origin, basis or foundation of the causes, as being the same with respect to each; the question or issues presented for adjudication as being of the same character; the rights or interests of the defendants, as being identical or similar; and the relief which each invokes as being of the same general character." King v. Rice, 285 Ill. 123, 120 N.E. 449; Abbott v. Loving, 303 Ill. 154, 135 N.E. 442;Alabama v. Arizona, 291 U.S. 286, 54 S.Ct. 399, 78 L.Ed. 798. The relief sought in the instant case would require *Page 260 
different answers, different proof, and different decrees. The relief against the former wife concerns her alone, and the decree, if against her divorce, would not affect the parents; and a decree for discovery and injunction against the parents would not affect the former wife. As applied in this State, the rule will not permit courts of equity to approve the uniting in one bill matters so dissimilar as are those in this case.
The discovery sought in this case is unusual. No authority in a case like this has been cited, nor have we found any holding, under allegations of a bill similar to those in this case, that discovery of money expended on behalf of a daughter by her parents, whether before or after her divorce, can be required. The right of discovery is limited to matter which is material and pertinent to the issue in the case. It cannot be had for matters merely useful in supplying a clue whereby evidence may be found for use in an anticipated case. 17 Am. Jur., p. 11, Sec. 12; p. 14, Sec. 16; 27 C.J.S., Discovery, p. 7, Sec. 2; 18 C.J.,
page 1060, note 57; p. 1068, note 56; 27 C.J.S., Discovery,
Sec. 3, note 53, Sec. 11, note 6; Brandenburg v. Buda Co.,299 Ill. 133, 132 N.E. 514; Carden v. Ensminger, annotation 58A.L.R. 1264; People of State of New York ex rel. Lemon v.Supreme Court, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200.
It is the settled law in this State that equity will grant discovery only in a certain class of cases, such as the settlement of accounts between partners or persons jointly engaged in some enterprise. Sections 106 and 107 of Article 75 of the Code, provide for the method of procuring discovery, "and where there is ample remedy at law, courts of equity will not interpose." Johnson v. Maryland Trust Co., 176 Md. 557, 566,6 A.2d 383, 387; Becker v. Frederick W. Lipps Co., 131 Md. 301,101 A. 783. In the latest case decided by this court in which the question of discovery was considered (Goldsborough v. CountyTrust Co., 180 Md. 59, 22 A.2d 920, 921, decided December 3, 1941), Chief Judge Bond said: "The plaintiff *Page 261 
must show the necessity for his resorting to the remedy, and is permitted to seek only that which is necessary. The mere fact that he does not know the facts sought is not sufficient if they are available to him by his own efforts. He cannot invoke the aid of the court to relieve him of the effort to provide it for himself." Citing Becker v. Frederick W. Lipps Co., supra. Here, if relevant, the information sought is easily available to the appellee in a court of law, and under the facts as alleged the jurisdiction of equity cannot be invoked. Hill v. Pinder,150 Md. 397, 133 A. 134.
In reference to the injunction sought against the parents, enjoining them "from keeping the said Beatrice Bank away, and from inducing and prevailing upon her to stay and remain away, and from aiding, abetting and co-operating with said Beatrice Bank in continuing her said separation, and living away and apart from" the appellee, cases have been cited which hold that parties, other than parents, have been enjoined from alienating a spouse's affections, and while the decisions are not uniform, some seem to hold that third parties may be enjoined from interfering in the domestic affairs of a husband and wife. But as stated in 27 American Jurisprudence, Sec. 520, p. 121, "that seems to be little authority on this point so far as parents are concerned." In this State no decisions of this court have sustained the issuance of an injunction against parents enjoining them from maintaining and supporting a child, whether married or unmarried. The policy followed by this court in such matters is clearly stated in Miller v. Miller, 165 Md. 425, 433,169 A. 426, 429, where it is said: "A father's house is always open to his children; and whether they be married or unmarried, it is still to them a refuge from evil, and a consolation in distress. Natural affection establishes and consecrates this asylum. The father is under even a legal obligation to maintain his children * * * if he be competent, and they unable to maintain themselves; and according to Lord Coke, it is `nature's *Page 262 
profession to assist, maintain and console a child'." Kurdle v.Brookmeyer, 172 Md. 246, 191 A. 416; 27 Am. Jur., p. 121, Sec. 520, p. 150, Sec. 529.
In this case it is the contention of the appellee that the injunction should be granted against the parents because a continuing tort is being committed by them in prevailing upon their daughter to continue to remain away from the appellee. But in reference to that contention it must be kept in mind that the allegations of the bill now before us show that the parents have been sued at law for the alienation of the affections of the appellee's wife and a judgment recovered against them, which has been paid and satisfied. The bill does not allege a reconciliation, or that a reconciliation is possible which now is being prevented by the parents. The fact is alleged that a divorce, the regularity of which has not yet been determined, has been obtained which, it would seem, indicates very strongly that the former wife no longer holds any affection for the appellee to be alienated. However, that is a matter which must be settled in a court of law. Also, any question of res judicata must be raised in like manner. Those questions are not at this time before us. If it be true that the affections of the appellee's former wife have been alienated by the influence of her parents, the question whether they now are guilty of committing a continuing tort must be raised in a future suit at law.
Also, it was contended that an injunction should be granted because a property right of the appellee is involved. That contention was advanced because it has definitely been decided in this State that equity will not, by way of injunction, grant relief for personal wrongs. Chappell v. Stewart, 82 Md. 323, 33 A. 542, 37 L.R.A. 783, 51 Am. St. Rep. 476. But in this case facts are not alleged which, if true, would show that any property rights have been invaded. The right of consortium is not a right recognized in this State as the subject of equity protection by way of injunction. *Page 263 
"The law distinguishes between the right of a parent to interest himself in the marital affairs of his child, and the absence of right in a stranger to meddle in such affairs. * * * A parent is not liable where he acts and advises his child in good faith with respect to his child's marital relations in the interest of his child, as he see it, the marriage of his child not terminating his right and liberty to interest himself in and to be extremely solicitous for his child's welfare and happiness even where his conduct and advice suggest or result in the separation of the spouses or the obtaining of a divorce." 27 Am.Jur., Husband and Wife, p. 130, Sec. 529; 30 C.J., Husband andWife, p. 1129, Sec. 996.
Courts of equity always have regarded the problems of enforcement as important factors in determining whether injunctive relief is appropriate. In Restatement of the Law ofTorts, Vol. 4, Sec. 943, pp. 721, 722, it is said: "The practicability of drafting and enforcing the order or judgment is one of the factors to be considered in determining the appropriateness of injunction against tort. * * * An injunction will not be granted if the impracticability of drafting or enforcing the order or judgment is disproportionate to the relief which the plaintiff would derive from an injunction or to the hardship he would suffer if an injunction should be denied. This is true whether the purpose of injunction is to restrain threatened tort or to compel affirmative reparation. In both, the court must delineate with practicable precision the action which is to be prohibited or required, and must envisage the practicability of enforcement measures should the defendant refuse to comply. * * * This is particularly true in attempts to protect by injunction some interests of personalty. For example, injunction against alienation of affections would probably only serve to add fuel to the flames." And at page 177, Sec. 814, "Such relief may be denied when, though otherwise appropriate, the decree would not be enforceable because of the difficulties that enforcement would involve." *Page 264 
In Snedaker v. King, 111 Ohio St. 225, 229, 145 N.E. 15, 17, where a wife sought an injunction to restrain a woman from associating with her husband, the court said: "Such extension of the jurisdiction of equity to regulate and control domestic relations, in addition to the legal and statutory remedies already provided, in our opinion, is not supported by authority, warranted by sound reasoning, or in the interest of good morals, or public policy. The opening of such a wide field for injunctive process, enforceable only by contempt proceedings, the difficulty, if not impossibility of such enforcement, and the very doubtful beneficial results to be obtained thereby, warrant the denial of such a decree. * * *"
In the case now before us we are asked to hold, for the first time in this State, that a parent may be enjoined from counselling, and supporting, a daughter living apart from her former husband. That we decline to do. On the contrary, supported by the authorities above cited, and exercising the broad discretion vested in courts of equity in matters of injunctive relief, we hold that the amended and supplemental bill of complaint in this case does not present a cause which will justify the relief here sought against the appellants Jacob A. and Dora Pleet.
Order in No. 56 overruling demurrer reversed, and remanded forfurther proceedings.
Orders in Nos. 57 and 58 overruling demurrers reversed.
Bill dismissed as to appellants Jacob A. Pleet and DoraPleet.
Appellee to pay the costs in each case. *Page 265